The final case for argument today is 2015-1042, NOROTOS v. OPS-CORE. I'd like to start off, take one minute of my time, so that everyone understands what the invention relates to and how it works. It's a simple thing. We're talking about a paratrooper jumping out of an airplane at night, landing and attaching night vision goggles to his helmet. The way this is done, and the setup is, he wears a helmet, and on the helmet is a bracket attached to the helmet. Then, when he lands, there is a mount arm, and on one end of the mount arm is a rectangular lock plate snapped into the bracket to the helmet. On the other end, it attaches to the night vision goggle. We don't care about that. That's not part of this invention, the connection to the night vision goggle. In the prior art, the way this was always done, you had a helmet, which is slightly curved, and the bracket that was attached to it was rectangular. Why was it rectangular? Because the lock plate on the mount arm was rectangular, and he had to snap it in. It would go like this. Well, if you look at this, there's a space here between the edges which parachute lines could snag on. What the paratroopers did to avoid that problem, because you don't want to be jumping through the air and have the parachute line snag on it, is before they would jump, they would take duct tape and wrap it around, and that took care of there being any sharp edges. Nothing could do it. The problem was, when you landed, before they could snap on the mount arm, they had to take the duct tape off. That takes time. It's glued on there. Time matters if you're being shot at, right? They just parachute it down. So, what this invention did was, you had the helmet, and instead of the bracket being round, what we call in the Patna Shroud, it's contoured to meet the surface of the helmet. There's no edges out there, and therefore, there can't be any snagging of the parachute line. But you still had the rectangular insert on there to meet. It works like this. Okay, well, I think maybe we can start asking and focus this argument a little more on what's at stake in this case. It'll get there really quickly. This is what it is. I don't know if you can see it. This is the shroud plate contoured to the surface. There's no question about it. In the appendix, it's A794. And this is the mount arm. And on the end, you have a rectangular lock plate, and it just snaps in. And that's what it is. None of that's disputed. What the issue is on the written description is where the release mechanism is for disconnecting these. In the patent, what is shown in there is the release mechanism is on the shroud itself. In the accused product and what has been found to infringe, the release mechanism was on the lock plate. And that's the key to the dispute here, correct? Correct. That's the key to the dispute. What the testimony was at trial, there were two people who testified with regard to this. What you're describing as a lock plate, the black device, is that the arm? Well, the arm would be this. That's the arm. Right. The lock plate is this rectangular thing on the end, which gets inserted in and gets locked in. Let me ask you a question. Okay. We do a lot of these cases, and it's not that extreme or unusual to see an instance where a patentee comes in. He's got a great patent. He's got a great idea. But in order to assert infringement, he comes up with a claim construction that's quite broad in order to capture what he thinks is the accused device. And then in light of that, you get into a broad claim construction, which ultimately then is evaluated as to whether or not the written description is sufficient. So no one is disputing that you've got an invention here and there's a lock and release mechanism that's on the shelf. But what went down here was that you were trying to get infringement right based on a lock and release mechanism that is separate from the shell, and that's the heart of what we need a written description for. Is that a correct or fair analysis of what's going on? Yes. Okay. So where is the written description in the patent, in the specification, with regard to a lock and release mechanism being separate from the shell? The testimony at trial was… Why don't you tell me what's in the patent, in the specification that goes to a written, what your view is as to where the written description is for that embodiment? That the lock and release mechanism may be on the shroud. It's not required to be on the shroud. It may be. And that was the purpose of me going through this. That identifies it, but what describes it? Where is the written description requirement? What is it in the specification that describes that? There were two people at trial who testified with regard to this. One of whom was PULO, their witness. Vice President of Gentex, the present owner of Ofscore. He had 29 years' experience in the field. These products were his responsibility. He said he understood the products. He understood patents relating to them. And he said… Which witness is that? PULO. P-U-L-L-O. Okay. That's the witness? It was Ofscore's witness. He's the Vice President of their parent company. And he said, a person reading this language that the lock and release mechanism may, a person of ordinary skill in the art, reading this, saying that it may be there, the only other place to them, it would be obvious, would be on the lock plate. Because they're the only two things being connected. They're the only two places you can put it. I'm sorry. What would be obvious? It would be obvious that if you didn't put the lock and release on the shroud, you'd put it on the lock plate. That's what's being connected. It had to be one place or the other. And if it's not required to be here, the only other place it could be is here. That's what's, you know, the only two pieces being connected here. To have them released, you have to have the release on one of them. You're not relying on Prendergast's testimony. Yes, I rely on Prendergast. Prendergast unequivocally said someone of ordinary skill in the art would recognize. But the jury had every right to disbelieve him, given that he had admitted that he had signed a false declaration. It was not a false declaration. He's a layman. He's a layman who signed a declaration who said he was not an officer, director, or managing agent. The judge, when we had the inequitable conduct trial later on, it was clearly explained. He felt that he was the director of manufacturing. That's his title, but he wasn't a director of the corporation, and that's what the declaration was. After we had the inequitable conduct trial, they dismissed it without briefing it because it wasn't a false declaration. He didn't – he was not a director of the corporation. He was director of manufacturing, but that's not what we're talking about here. And if the jury disregarded Prendergast, there's no reason they would disregard Pulo, and there was nothing in the record that someone of ordinary skill in the art reading this wouldn't understand. The problem I have with that argument, though, is I think that's contrary to what we've said in a long line of cases, including TurboCare and Lockwood, that for purposes of a written description analysis – so tell me if you disagree with what the law is – that for purposes of written description, you don't engage in an obviousness analysis. It's either there or it's not there. You can't say one skilled in the art would have been able to do something. You're left with what exactly is laid out in the specification. Are we in agreement on that in terms of the law? That is what the law is, yes. So a couple times in response, you've mentioned that one skilled in the art would have. Why is that relevant at all to this discussion? Pulo isn't a lawyer, and he certainly wasn't prepared to testify by us. So when asked, he said it would have been obvious to someone of skill in the art to do it. He didn't mean obvious in the technical term. When Prendergast was asked, he said someone skilled in the art would know because it was shown in the prior art. Okay. Can I ask you – I thought we just agreed that the law didn't allow that for purposes of satisfying the written description requirement. Do you disagree with my analysis of the cases? I'm not disagreeing with your analysis of the cases. What I'm saying is they're not saying it would have been obvious. The prior art showed that it could be on the lock plate. The very prior art they cited in the reexamination, they cited the HMA in the reexamination as anticipatory prior art. In the HMA, the lock and release was on the lock plate. It wasn't on the shroud. It was on the lock plate. It was well known in the prior art that you could put it in either place. It's not that it would have been obvious. It was common knowledge. There were only two places. It's not an obviousness in the case. Isn't this really a problem, or your problem is claim construction? We're not dealing with claim – oh, sorry. You haven't argued that. You haven't briefed that. No, because claim construction wasn't an issue at this trial, actually. You're arguing inherency. What I'm arguing, I believe, is that someone of ordinary skill in the art reading this patent would know, if you have a lock and release mechanism, based on their knowledge of the entirety of the prior art, or in fact, actually, the most prevalent prior art, the lock and release on the most prevalent prior art, that BRAC was on the lock plate. Not on the shroud. People of skill in the art would know that. It's not a case that it would have been obvious to. They'd have to go through some thought process there. They knew that's where it was, because in that flat bracket, that's where it was in the HMA. They asserted that. They asserted as anticipatory prior art having the lock and release on the lock plate. That's what the re-exam was about. And we didn't argue that it couldn't be there. We admitted that it could, but we're able to get – Well, it's a little odd argument. In order to defend yourself against written description, it seems to me that you're defending it by acknowledging that there's anticipation. I mean, you're saying it was out there already. That's why one should have read it into the specification. Well, if it was out there already, then you've got a separate and distinct problem, right? No. We didn't claim invention on the location of lock and release. What the invention here was having the shroud be contoured to the surface so that it would be what they defined as smooth so it wouldn't snag a shroud line. The location of the lock and release had nothing to do with the invention. Let me go back to the question that I asked. Now, it seems to me that the district court construed Claim 22 to allow the lock and the release mechanism to be on the lock plate. That's correct. Did you support that construction? Support it in what sense? Did you object to it? No. Well, isn't that your problem? I mean – No, I don't think so. I think when you look at the specification in view of the construction, you've got a problem. That's why you're here. We're here because they were successful in the trial to convince the jury that all you had to do was look at the patent and it was not shown in there. They never in their argument to the jury or at any other time put in any evidence that someone of ordinary skill in the art reading this patent wouldn't know that the lock and release could be on the lock plate. And you had the opportunity to put on all the evidence. And we did. And the jury apparently – The jury came back with a question. The jury came back and they were given a special verdict where there were three grounds for possible invalidity of the patent. Remember, this was a trial strictly on validity. Right. And they came back and they said if we find one – If we do, we'll find the others. And it's a whole lot easier to say, hey, I don't see it there. We'll check off that rather than dealing with prior art and dealing with – You're suggesting that as a matter of law we would somehow discount the jury's verdict. No, I'm saying that there was no evidence in the record that they could rely on that a person of ordinary skill in the art reading this patent wouldn't know that there were two possible locations for the lock and release mechanism, on the shroud or on the lock plate. Someone with skill in the art would absolutely know that because the evidence showed that that was what was known in the prior art. It could be in one place or the other. That's it. That's what the testimony was. There was no contrary testimony. Okay. Why don't we hear from the other side and move us for a couple minutes of rebuttal and hopefully keep things even, Mr. Kenworthy, if you need a couple extra minutes. Good morning, Your Honor. May it please the Court. We're dealing here with an issue of fact. Written description is an issue of fact. Rotos moved for summary judgment on certain invalidity grounds. They never moved for summary judgment on written description. Risky decision, right, when the jury comes back and says, we found one. Should we go on to the others? Risky from my point of view, Your Honor? Yes. Well, probably not because they must have found in our favor on the one that they found. But now we're up on review and you're trying to tell us, I think, that maybe we should look in anticipation, too. Well, what we there have is, although I can address that, there isn't any waiver. There may be a waiver of a trial of that issue by jury. There's no waiver of the issue. It then just becomes decidable by, initially, the district court, or if the district court denies the motion for JMAL under Rule 50B, it could be an alternative ground to affirm. So it's not really – and if the worst comes to worst, we go back, the judge has to decide it, and then if this were set aside, we'd have a new trial. So we probably would have liked to have this jury decide it. But if the jury only wants to decide, we don't want to be the ones that are telling them, you've got to go back. But I don't think there's any risk of waiving. What's your response? I mean, it seems the gravamen of your friend's argument is that – I mean, not an obviousness analysis, but just that everybody in the world would have known that. Well, that is an obviousness analysis. In the testimony, the words the witnesses gave, both Prendergrass and Pullo, and I want to talk about Pullo, was that it would be obvious. Judge Wallach talked about inherency. Inherency is when something necessarily has to be there. Here, it does not necessarily have to be either place. They chose – they tried to say what their invention was is just to make it smooth. This is an element of the claim. You can't disavow this as part of the invention. The lock and release mechanism are part of what are comprised of what the shroud plate comprises. In order to comprise it, it has to include that. And the shroud – the claim has three different parts. It has a shell, an insert, and a lock and release mechanism. That's got to be part of the shroud. The claim construction they got was to have it – the lock and release provided not by any of those elements that are what are in the claims, but by a separate mount arm, the lock plate at the end of the mount arm. That's not what they claimed, and that is at best would have been obvious, but they chose to claim one in which the lock and release mechanism was exactly as the figure they just showed up there. It was part. So that's what they chose as part of their invention. Could the NVD attach directly to the helmet without the arm and have a lock and release mechanism on the NVD as well? So you'd have a third alternative. I think you probably could have, yes. I think there's a way that you could have that without an arm in between. Yes, I think that could have been configured, but it still would not have been on the shroud. And that's the critical – But it would have been a third alternative. It would have been a third. And you can also have a plate that would allow – an adapter plate that might have been in between. So there could have been a whole variety of reasons. The jury heard all the evidence. They're not obliged to – in fact, the Supreme Court teaches you must disregard every evidence that's in favor of the movement for judgment as a matter of law or the appellee in this case. And the evidence that is there is the specification. The case is very clear that that is what we must look to, an objective inquiry. And the court en banc has said that in Ariat, an objective inquiry into the four corners of the specification. And that's – Yes, but if you're looking at the specification, column four, line 55 and on, it says, while various embodiments have been shown, it would be apparent to those skilled in the art that many more modifications are possible without the parties. That's for sure, Your Honor. And that's the only – when we asked an interrogatory for them to identify – Why is – okay, so we all agree that it's there. Why isn't that – the question is why isn't that sufficient? Because all that says is it would be obvious to look somewhere else. It didn't say that you could look to the mount arm. It talked about there are other – the only places they identified were specific places at the bottom of the shell. There are other places it could have been on the side of the shell, the top of the shell. There are other places from what was there, but they never suggested that it was other than being one of the components that has to comprise the shroud. And merely this, if I properly say this, kind of boilerplate language at the end of a spec that say, people skilled in the art will know there are other places is not enough, I submit, in any case that this court, the side that I'm aware of, that it said that that kind of thing is enough to make a written description that would cover any of those other places. There has to be something that shows that it would cover what the court found, which was in the construction, was that it can be supported by a lock and release mechanism supplied by the mount arm. So that language, I think, is clearly – is nothing more than that it would be obvious that it could be other places but doesn't in any way suggest. And we're not dealing with a circumstance where you can look to the prior art to supply it because it might be necessary. And I think a good example of that, it's a case we didn't cite, but it's Posen versus Parr Pharmaceuticals, which Judge Wallach wrote the opinion for the majority of that last September, which was a case in which there were elements that required labels on a pharmaceutical to give instructions for use. Those were elements of the claim. They weren't described in the specification, but because the FDA required that and because that was inherent, it was necessarily required, the court found that that wasn't something that was required here. Here, if you just have prior art that shows optionally under different kind of claim language, you could have put it somewhere else. Certainly is nothing that can be a substitute because the critical element in written description is to show that the patentee invented what was claimed. As construed, it's contended that they invented something in which the lock and release are on a mount arm. They didn't invent that. It's not in the spec, and indeed their own testimony was that they didn't even come up with that design until two years after the spec was written. So it's just clear when you look that there is no description that would allow a person to contend or to conclude that that was what was invented. I want to talk briefly about Mr. Pullo because they've admitted in their brief that he was not one skilled in the art. He's not one skilled in the art. He was offered by Ops Corps merely to identify what the prior art was and whether it was prior art. He's a businessman. He's in sales. He's not skilled in the art. He's not shown to have ever even read or understood the claim construction, and he didn't give any opinion about written description. He gave his opinion about obviousness, and again, the jury wasn't obliged to accept that in any event. But when you look at the written description part, which Judge Probst, I think, has pointed to, the only very narrow part that they've identified, that simply is insufficient. The jury found it was insufficient, and Judge Stearns found that their verdict was supported by substantial evidence. I'd like to talk briefly and only briefly about the, unless there are any other questions, about the alternative ground of affirmance. First, we've talked a little bit about the waiver argument that has been made by Apolli. I think that is simply not well… I don't understand the alternative ground. Anticipation is a question of fact. It is a question of fact. So you're asking us, in the first instance, as an appellate court, to enter judgment on a question of fact? It's a question of fact for which there's no disputed evidence. But yes, it is, and the court doesn't have to. There's no question about that. Okay. Certainly, you know, we've cited Glaxo v. Tor Farm, which really sets forth the standard, and the court may choose not to. But what our hope would be, if we ever got through this, is we don't have to go back and address all those other issues, when it's clear that the only evidence that they relied on was conclusory testimony. Two lines by Mr. Prendergrass is, it doesn't have an insert, and it doesn't have a smooth shell. A conclusory statement, and that was the extent of it. Not why, not analysis. In the cases of this court, there are numerous, and we've cited them, that such conclusory testimony is not enough to avoid entry of judgment as a matter of law on anticipation. Did you all present any evidence that a person of ordinary skill in the art, that the panties were not in possession of the claim invention in the manner it was construed? Did we present testimony? No, Your Honor. Any evidence at all? We presented the specification itself. What we did elicit on cross-examination of Mr. Prendergrass was that because the specification, the summary of the invention, talks about this device being an interface between the helmet and the mount arm. If it's an interface between them, the patented device can't include something that's a part of what's an interface between. And he specifically said, that's the case you wouldn't, a person of ordinary skill then, wouldn't look to the mount arm. We did get that on cross-examination, but we did not present. Don't you have the burden to show through clear and convincing evidence that the written description was insufficient? We do. We do, Your Honor. He didn't submit any evidence of what a person of ordinary skill in the art would show. How can you say you presented clear and convincing evidence? I think there are a number of cases. I think the Rochester case, for one, makes it very clear it can be done based on the specification alone. The evidence has to come from an objective view. And if the only thing they've identified is the language that Judge Prost, as a matter of law, that is insufficient. The cases are very clear. You don't have to present testimony by a witness about language which is undisputed. So we presented the forecorner of the specification. We presented a cross-examination of Mr. Prendergrast, and we don't believe we need to show more. And the jury was satisfied. But I think, to Your Honor's question, the case law, not only in written description but in other comparable areas, whether it be obviousness, it doesn't require that there be a witness testifying about what would be obvious to an ordinary person, what would be disclosed. If you have nothing more that says other embodiments could be, that is not enough from the forecorners for an objective inquiry for any jury to have concluded that the written description was satisfied. Do you have your argument? Okay, thank you. Mr. Schwartz, a couple minutes. Very briefly. D. Walsh, do you also want me to address anticipation? You're free, Your Honor. Okay, very quickly. Yes, we didn't show in the patent that the lock and release mechanism was on the lock plate. I didn't understand the word inherent. If there's only two places it can be, because those are the two being connected, people of ordinary skill in the art would recognize that. That was what was used in the prior art. The people who did testify about it said, yes, they would know about that. Although you list a whole bundle of elements in a claim, not every element is novel in being claimed. We weren't claiming novelty as to the location of the lock and release mechanism. Prior art showed it in either of those two places. People of ordinary skill would know that. With regard to Prendergast's testimony, he had already testified that the lock and release mechanism, a person of ordinary skill in the art would know it would be on the lock plate. He was differentiating between the lock plate and the mount arm. Nobody would look on the mount arm for the lock and release. It's not connected. That's what his testimony was about. With regard to anticipation, I don't think it's right for appeal, but I can just point out that in Judge Gertner, she was the original judge in the case. She did the claim construction as part of summary judgment. One of the terms that was not defined was plate. We use the ordinary definition of plate, which is a smooth, flat, thin piece of material. That's what the lock plate is.  In the two patents that they claim, anticipate, one was the 181 patent. That's owned by Gentex. Poulos, their witness, is the vice president of Gentex. He said he was well familiar with this patent, and he said it doesn't have a plate. You don't have an insert adapted to receive a lock plate. What you have in the 181 patent are pins that go through an aperture. Pins going through an aperture is not a plate being received by an insert. 181 patent is out. One final thought? Final thought. The 834 patent also doesn't show a plate being received. It shows a surface that has hooks coming out of it. The hooks get received. There's nothing there. With regard to the first one, to say that you have to list every possible embodiment in there means that every patent has to show every possible embodiment, or you can't expand it past that. It's limited to the face of what embodiments are actually shown. That can't be the law. You've got to be able to expand to what people know are included by the disclosure. And in this disclosure, that you have a lock and release mechanism, anyone of skill in the art would know it has to be in one of the two places. It can't be directly on the night vision device. Well, the night vision device doesn't get attached directly on it. It can't? I guess if you put a lock plate on the end of the lock, I don't know how that would work, actually. It can project. I don't know if that's possible. Maybe it is. I don't know. Well, we have the argument. We thank both parties. The case is submitted.